UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-14044-CANNON/MAYNARD

UNITED STATES OF AMERICA

v.

JUAN ANTONIO GARCIA,

    **Defendant.**
_____/

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this sentencing memorandum recommending that this Court sentence the defendant, Juan Antonio Garcia, to a sentence at the high-end of the guideline range as calculated in the Presentence Investigation Report (DE43). In support thereof, the United States submits as follows:

    **I.**    **Procedural History**

On December 9, 2021, a federal grand jury in the Southern District of Florida returned a two-count indictment charging the defendant with attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and attempted enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (DE13). The defendant pled guilty to both counts as charged in the Indictment on April 4, 2022. A sentencing hearing has been scheduled for July 11, 2022.

    **II.**    **Factual Background**

The defendant, a 30-year-old law enforcement officer with the Sewall's Point Police Department, was a family friend of the victim, a 15-year-old boy (hereinafter "the victim"). The

two had met several years prior to the offense conduct when the victim was in the Cub Scouts with the defendant's nephew. As the families lived in close proximity to each other, the defendant and the victim became friendly over the years. The defendant's family also operates a food truck in Martin County. In June 2021, the victim began working part-time for the defendant in the food truck. Some time later, the victim's father noticed that the victim had stopped going to work for the defendant. In an attempt to determine why, the victim's father reviewed his son's text messages and discovered sexually explicit messages from the defendant.

The text message conversation between the defendant and the victim began in approximately June 2021 and the defendant soon began steering the conversation toward sexual topics, making numerous and random references to the victim masturbating and encouraging the victim to discuss his sexual history. The defendant also repeatedly requested that the victim accompany him to Blind Creek Beach, a well-known nudist beach in the area, and told the victim that he would "get the camera," indicating his desire to photograph the victim nude. Upon learning that the victim had a girlfriend, the defendant pressed him for explicit details about his sexual experiences and offered to provide the victim with condoms. The defendant then encouraged the victim to masturbate with a condom on to make sure it fit correctly and told the victim, "I would have to actually see it [meaning the condom on the victim's penis] to say if it's too big for you." After confirming that the victim had, in fact, masturbated as instructed, the defendant asked the victim to send him a photograph of the used condom as proof. The victim declined to send any photographs, so the defendant suggested that they meet up at the victim's house at a time when his parents would be away, under the guise of having the victim try on different styles of condoms in front of him.

2

After discovering this conversation on his son's cell phone, the victim's father contacted law enforcement and gave a detective from the Martin County Sheriff's Office (hereinafter "the UC") permission to assume his son's online identity in an undercover capacity. The UC took over the victim's persona on November 22, 2021, and continued communicating with the defendant. That evening, believing he was communicating with the victim, the defendant instructed the UC to record a video of himself masturbating and to send it to him.

Later during that same conversation, in the evening of November 22 and early morning hours of November 23, the defendant asked the victim if he had ever considered performing oral sex on a male. The UC responded that he was open to the idea, and the defendant responded, "That's cool, I could use one." The defendant then asked the victim several times if the victim was offering to perform oral sex on him. The defendant resisted the UC's attempts to steer the conversation to nonsexual topics and continued to press the victim about exploring his sexuality and experimenting with someone the victim could trust, like the defendant.

Later in the day on November 23, the defendant messaged the victim to arrange to meet up to "experiment" with each other sexually. The UC indicated that he was busy that day, but the defendant was insistent that the meeting happen that day. When the UC asked for clarification of what the defendant wanted to do when they met, the defendant stated, "You know I could use a bj [oral sex] but [I'll] be good with hj [manual stimulation of his penis] if that's all you feel like doing." The defendant then instructed the victim to meet him at a local park in 30 minutes.

Law enforcement arrested the defendant when he arrived at the designated meeting location. In a post-*Miranda* interview with law enforcement, the defendant acknowledged having the text message conversations with the victim, whom he knew to be 15 years old. The defendant further admitted that at the time he was asking the victim to produce a video of himself

masturbating on November 22, he was on duty in his Sewall's Point Police Department vehicle. He blamed his actions on not having had sex in some time and being "horny."

### III. Guideline Calculations in the Presentence Investigation Report

On June 6, 2022, the U.S. Probation Office issued its Final Presentence Investigation Report (PSI; DE44). The PSI determined that the applicable guideline range for the underlying offenses is 292 to 365 months' imprisonment and a period of supervised release of five years to life (PSI ¶¶ 71, 75). The government has no objection to the guideline calculations in the PSI.

### IV. Sentencing Recommendation

To calculate a reasonable and appropriate sentence, the Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the later." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Although the Court may not presume that a guideline-range sentence is reasonable, the guidelines remain a significant and pivotal component of the sentencing process. *United States v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019); *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("[W]hile we do not presume that a sentence falling within the guidelines range is reasonable, we ordinarily expect it to be so."). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Informed by these considerations, the court must further contemplate the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner.

*See* 18 U.S.C. § 3553(a)(2). Consideration of the § 3553(a) factors necessitates a sentence at the high-end of the guideline range.

    **A.**    **Nature and Circumstances of the Offenses**

The defendant's insidious offense conduct in this case is extremely concerning. The defendant took advantage of an existing familiar and supervisory relationship to attempt to sexually abuse and exploit a 15-year-old boy for his own sexual gratification. This was not a one-time lapse in judgment. Over the course of five years, the defendant cultivated a friendship with his victim and earned the trust of the victim's family to such an extent that the boy's father trusted the defendant to be alone with his son socially and to supervise his son while at work in the defendant's food truck. Instead of taking this opportunity to mentor the boy through a developmentally difficult period of his life, the defendant targeted him for sexual predation. The defendant exploited his existing relationship to goad the victim into sharing deeply personal details about his blossoming sexual development, which the defendant then manipulated into requests for sexually explicit images. Under the guise of a concerned confidant providing education on safe sex practices, the defendant tried to trick the victim into producing and sending images of his penis and videos of himself masturbating.

When it became clear that the victim would not be producing any child pornography for the defendant, the defendant switched tactics and focused on pursuing an in-person sexual encounter with the victim. The defendant first attempted to get the victim to meet with him alone to "try on" condoms, a sexually charged scenario that the defendant obviously hoped would evolve into physical sexual contact, at a time when his parents were not around to protect him. After engaging in sexual conversation with the victim for months and once the defendant felt the victim was primed to accept his advances, the defendant then proposed the idea of the victim exploring

5

his sexuality by performing oral sex on a trusted male friend, such as the defendant himself. As soon as the victim—at this point the undercover detective—indicated an openness to the defendant's solicitation, the defendant became insistent upon meeting up as soon as possible, before the victim could change his mind. The defendant's lengthy pursuit of the victim and his eagerness to sexually abuse an adolescent boy without hesitation demand a significant prison sentence.

**B.      History and Characteristics of the Defendant**

Perhaps what makes the defendant's conduct most egregious is that he committed these acts while actively on duty as a Sewall's Point police officer. Instead of protecting the community, the defendant chose to spend his overnight shifts relentlessly pursuing sexually explicit images and, eventually, a sexual encounter with a minor. In doing so, the defendant violated not only the victim's trust, but the public's as well. As a law enforcement officer, the defendant should be held to a higher standard of conduct and should be punished severely for his despicable crimes against the most vulnerable segment of the community he swore to protect and serve.

Further, nothing in the defendant's history warrants a downward departure from the guideline range. As reflected in the PSI, the defendant had a stable, supportive home life growing up and continues to enjoy familial support even after his arrest (PSI ¶¶ 42-47). He reported no mental, emotional, or substance abuse concerns (PSI ¶¶ 52-53). Prior to resigning from the Sewall's Point Police Department while under investigation for violation of moral character standards, the defendant was gainfully and stably employed (PSI ¶ 60). In fact, the defendant's monstrous criminal conduct is all the more shocking in light of his positive upbringing and promising career in public service. Therefore, there is nothing in the defendant's history or characteristics that would justify anything less than a guidelines sentence.

### C. Need to Protect the Public, Reflect the Seriousness of the Crime, Promote Respect for the Law, and to Provide Just Punishment

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). The Eleventh Circuit has recognized that "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 1813 (2011). Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n.30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). Because they are "among the most egregious and despicable" offenses, child sex crimes demand lengthy prison sentences for offenders. *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009).

Deterrence is also particularly important for crimes involving the sexual exploitation of children, given the "high rate of recidivism among convicted sex offenders and their dangerousness as a class. . . ." *Smith v. Doe*, 538 U.S. 84, 103 (2003); *see also United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007) ("Sentences influence behavior, or so at least Congress though when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor."). As the Eleventh Circuit has long recognized, research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." *Irey*, 612 F.3d at 1214; *see also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("[S]ex offenders have appalling rates of recidivism and their crimes are under-reported.").

The defendant's months-long sexual fixation on his 15-year-old victim and insidious grooming of the boy suggest that he is an acute danger to the community for which significant

7

punishment and deterrence is warranted. The defendant used his relationship with the victim and his standing in the community to effectively hide in plain sight. Further, the defendant's involvement in his nephew's Cub Scouts activities and his assumption of supervisory responsibility over the victim indicate that the defendant actively sought out opportunities to be in a position of trust around young boys, which he could later exploit for his own sexual gratification.

The defendant's tendencies and pattern of conduct make him a dangerous predator in the community he claimed to serve. The Court's sentence must express an appropriate level of social condemnation of the defendant's crimes. A sentence at the high-end of the guidelines will not only protect children in the community for a considerable period of time, but will also promote respect for the law and deterring future offending by the defendant and others sharing his prurient interests by signaling that such behavior is abhorrent and will be punished harshly.

## CONCLUSION

Therefore, the United States respectfully requests that the Court sentence the defendant to a term of 365 months, the high-end of the guideline range as properly calculated by U.S. Probation.

    Respectfully submitted,

    JUAN ANTONIO GONZALEZ
    UNITED STATES ATTORNEY

By: /s/ Stacey Bergstrom
    Stacey Bergstrom
    Assistant United States Attorney
    Southern District of Florida
    Court ID No. A5502614
    101 South U.S. 1, Suite 3100
    Ft. Pierce, Florida 34950
    Telephone: (772) 466-0899
    E-mail: stacey.bergstrom@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 8, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via Notice of Electronic Filing generated by CM/ECF.

/s/ Stacey Bergstrom
STACEY BERGSTROM
ASSISTANT UNITED STATES ATTORNEY