**UNITED STATES DISTRICT COURT**
**FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 21-CR-14044-CANNON/MAYNARD**

**UNITED STATES OF AMERICA,**
        **Plaintiff(s),**

**vs.**

**JUAN ANTONIO GARCIA,**
        **Defendant(s).**

                                   /

## <u>DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT OF DOWNWARD VARIANCE OR IN THE ALTERNATIVE SENTENCING AT THE LOW END OF THE SENTENCING GUIDELINES</u>

**COMES NOW**, the Defendant, JUAN ANTONIO GARCIA, by and through undersigned counsel, pursuant to Fed. R. Crim. P. 32 and 18 USC § 3553(a) and respectfully submits the following Sentencing Memorandum to aid the Court at sentencing. The Defendant hereby notifies the Court that he has received and reviewed the Presentence Investigation.

1. Mr. Garcia comes before this Court having pled guilty on April 4, 2022, to a two-count Indictment. Count One charged attempted production of visual depiction of sexual exploitation of minors, in violation of 18 U.S.C. § 2251(a), Count Two charged attempted enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).

1

2.  As to Count One, the minimum term of imprisonment is 15 and the maximum term is 30 years, 18 U.S.C. § 2251(a), (e). As to Count Two, the minimum term of imprisonment is 10 years and the maximum term is life, 18 U.S.C. § 2422(b).

3.  Pursuant to the total offense level of 40 and a criminal history category of I, the guideline imprisonment range is 292 months to 365 months.

4.  Pursuant to the decision in *United States v. Booker*, 543 U.S. 220 (2005), Mr. Garcia respectfully requests this Court to impose a sentence that is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a). A variance or a sentence at the the low end of the guideline range will deprive Mr. Garcia of his liberty while furthering the Government's interest to protect the public and provide just punishment and afford adequate deterrence.

### Mr. Garcia's Conduct

Mr. Garcia was employed by the Sewall's Point Police Department when he befriended a 15-year-old boy (the "victim") and eventually employed the victim to work part-time at Mr. Garcia's food truck. In June 2021, a text message conversation began between Mr. Garcia and the victim, which included messages of a sexual nature. Mr. Garcia learned that the victim had a girlfriend and offered the victim condoms. During the text conversation, the

messages turned to a more explicit nature with Mr. Garcia requesting photos of the victim with the condom on and pictures of the condom after the victim had ejaculated. The victim's father learned about the text messages and notified the Martin County Sherriff's Office. A Martin County Sherriff's Office Deputy in an undercover capacity began conversing with Mr. Garcia. The undercover officer received messages from Mr. Garcia requesting the victim meet him to perform oral or manual stimulation on Mr. Garcia. Mr. Garcia instructed the undercover officer to meet him at a park, where he was arrested. In a post Miranda interview with law enforcement, Mr. Garcia immediately began cooperating and admitted to knowing the victim was 15 years old and that he previously solicited sexually explicit images and videos. Mr. Garcia consented to a search of his phone so that law enforcement may review the text messages. He cooperated completely.

Mr. Garcia has accepted full responsibility for his actions, did not obstruct justice in any way, assisted authorities in the investigation by voluntarily consenting to a search of his phone, and has agreed to plead guilty to forgo the need for the United States to Prepare for a trial. Furthermore, Mr. Garcia has no juvenile or adult criminal convictions. Mr. Garcia has no history of substance abuse. Mr. Garcia has a strong record of community involvement. Mr. Garcia was employed as a public servant with the Sewall's Point Police

Department for over 5 years. The Government's characterization of Mr. Garcia's actions as a "pattern of conduct" is inaccurate. The text messages at issue occurred over a short period and the Government makes no suggestion that Mr. Garcia's conduct included any other individuals.

## LEGAL STANDARD

### I.  RELEVANT FACTORS TO BE CONSIDERED IN SECTION 3553(A)

Post-*Booker*, a sentencing court has "greater latitude" to sentence outside the guideline range, and in "appropriate cases" may conclude that the criminal history category overstates the severity of the defendant's criminal history or that a lower sentence would still comply with and serve the mandates of section 3553(a). *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006); *United States v. McGhee*, 512 F.3d 1050 (8th Cir. 2008) (per curiam).

**Section 3553(a)(1): The nature and circumstances of the offense and the history and characteristics of the defendant:**

#### a. Defendant's Criminal History

As identified in the PSI, the Mr. Garcia has zero criminal history points. A criminal history check revealed no convictions as either a juvenile or adult.

#### b. Characteristics of the Defendant[1]

---

[1] *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (affirming downward variance from a guideline range of 41-51 months to five year's probation in possession of child pornography case based in part on finding that the defendant did not fit the profile of a

At the time of the offense, Mr. Garcia was suffering from multiple issues in his life and was not in a proper state of mind. Mr. Garcia's father suffers from multiple illnesses and his mother is unemployed. Until the incident, the family worked in the food truck business until they were no longer able to work. Upon learning of Mr. Garcia's arrest, the family was shocked that he was capable of undertaking such actions. Mr. Garcia was raised in a close-knit Catholic family. Mr. Garcia's father was the primary provider for the family while Mr. Garcia's mother cared for the children. Just prior to the offense, Mr. Garcia's fiancé, Jessica Adams informed him that they conceived a daughter and Mr. Garcia financially cared for Ms. Adams during the pregnancy, purchasing a home for her and the child to live. Mr. Garcia was beside himself when, upon Ms. Adams insistence, Mr. Garcia was not permitted to attend the birth. After the child's birth, she suffered several medical complications and Mr. Garcia was unable to assist in any way. Ms. Adams broke off her engagement to Mr. Garcia. In December, Mr. Garcia spoke with Ms. Adams parents who informed him that the child was not in fact his, and he was devastated. When Mr. Garcia confronted Ms. Adams about the ruse, she completely cut off all communication and Mr. Garcia was

---

pedophile, had no history of substance abuse, no interpersonal instability, was motivated and intelligent, and had the continuing support of his family).

unable to find the whereabouts of the child. He later learned that the child was being placed for adoption in New York leading him to file a Petition for Paternity in Circuit Court. Mr. Garcia continues to have no contact with the minor child and has received no additional information as to the events in this matter.

Dr. Landrum, who conducted a Forensic Psychological Evaluation on Mr. Garcia concluded that there is no evidence of a formal personality disorder. Individuals similar to Mr. Garcia who do not meet this criteria are viewed at a lower risk to re-offend. Dr. Landrum concluded that with Mr. Garcia's low self-image and low self-value have plagued him. Dr. Landrum will cite research that has shown similar individuals are more responsive to treatment and insight-oriented therapy. Mr. Garcia has acknowledged his need for intervention and would benefit from specific therapy. Mr. Garcia was severely depressed when the texts in this case were sent.

Despite enduring the stress and traumas in his personal life, Mr. Garcia kept working. However, as a result of his depression and deep devastation at losing what he thought would be his family, he acted on impulses that he should not have. Dr. Landrum has found that Mr. Garcia is at a low level of danger when it comes to re-offending. The severe depression and other mental issues while not in any way reducing his responsibility do put his

actions in context.  Mr. Garcia was devastated that his dream of having a family was crushed by Ms. Adams keeping him from the birth and then revealing that the child was not his.  It was in this diminished state that Mr. Garcia found himself pursuing a course of actions that he knows were deplorable.  He is ashamed of those texts.

### c. Cooperation with the Government

*United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014) ("[A] sentencing court has the power to consider a defendant's cooperation under § 3553(a), irrespective of whether the Government files a §5K1.1 motion."). Immediately after being confronted with the crimes charged, Mr. Garcia immediately cooperated with the investigation. "[A] sentencing court has the power to consider a defendant's cooperation under § 3553(a), irrespective of whether the Government files a §5K1.1 motion."). *United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014)[2]

**Section 3553(a)(2): The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

---

[2] *See also United States v. Landrón-Class*, 696 F.3d 62 (1st Cir. 2012), cert. denied, 133 S. Ct. 1621 (2013); *United States v. Massey*, 663 F.3d 852 (6th Cir. 2011); *United States v. Leiskunas*, 656 F.3d 732 (7th Cir. 2011); *United States v. Fernandez*, 443 F.3d 19 (2d Cir. 2006); *United States v. Doe*, 398 F.3d 1254 (10th Cir. 2005).

### a. Need to Protect the Public from Further Crimes

Mr. Garcia has no history of committing the crimes charged and deserves to be sentenced at the lower end of the guideline range with a focus on extensive counseling and treatment followed by an extensive period of supervised release if the Court finds no reasons for variance. *See United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (affirming a downward variance from 120 months in prison to 66 months with 10 years' supervised release, and observing that the sentencing court "accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct," but that "it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release").

### b. Need to Provide Just Punishment for the Offense

The Court may consider other ways in which Mr. Garcia has suffered punishment. *United States v. Anderson*, 533 F.3d 623 (8th Cir. 2008) (affirming a downward variance based on "other ways in which the defendant had suffered atypical punishment such as the loss of his reputation and his company, the ongoing case against him from the Securities and Exchange Commission and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal justice system"). Mr.

Garcia has accepted responsibility for his actions resulting in the complete loss of his reputation within the community and his family and friends.

**Totality of the § 3553(a) Factors**

As the United States Supreme Court has held in *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007), sentencing courts need not justify sentences outside the guideline range through "extraordinary" circumstances: the district court need only "take into account the § 3553(a) factors and recognize that the guidelines are not mandatory."

## II.    SENTENCING GUIDELINES ARE ADVISORY

Pursuant to 18 U.S.C. § 3553(a) in imposing sentence the Court "shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant."  That provision also provides that the Court "shall impose a sentence sufficient, but not greater than necessary.  The sentence should reflect the seriousness of the offense and promote respect for the law as well as provide just punishment for the offense.

*Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011).

This Court must correctly calculate the sentencing guidelines appropriate for the crime herein it also may not treat that guideline range as a mandatory sentence or statutorily presumptive.  See *Gall v. United States*, 552 U.S. 38, 49-51 (2007); *Nelson v. United States*, 555 U.S. 350, 352 (2009).  This Court should treat the guidelines range as "one factor among several" to be

considered in imposing an appropriate sentence under 18 U.S.C. § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).   In sentencing Mr. Garcia, the Court must "consider all of the § 3553(a) factors" and make "an individualized assessment based on the facts presented." *Gall at* 49-51. at 49-51.   The Court after considering the facts presented at sentencing must explain how the facts relate to the statutorily pronounced purposes of sentencing. *Id* at 53-60; *Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011).  In reaching its just sentence the Court has the "overarching" duty to "impose a sentence that is sufficient, but no greater than necessary to accomplish the goals of sentencing." *Pepper*, 131 S. Ct. at 1242-43.

As the Supreme Court has ruled, the guidelines are advisory, and this Court has the authority to disagree with the guideline range as a matter of policy. Because "the Guidelines are now advisory…, as a general matter, courts may vary based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails to properly reflect § 3553(a) considerations"). The Supreme Court held in *Kimbrough*, "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular

defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes..." *Kimbrough*, 552 U.S. at 91, 109-10; see also *Spears v. United States*, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range."). Congressionally directed guidelines are just as advisory as any other guideline and equally subject to policy-based variances.

In *Vazquez v. United States*, 130 S. Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." *Vazquez v. United States*, No. 09-5370 (Nov. 2009). As the Sixth Circuit has previously recognized, "all of the sentencing guidelines are advisory," including those directed by Congress. *United States v. Michael*, 576 F.3d 323, 327 (6th Cir. 2009).

In the instant case, Mr. Garcia's lack of prior criminal history and the nature of the offense are strong indicators that he will not commit future

offenses. Dr. Landrum will testify that given all of the circumstances of Mr. Garcia, and the crime charged, Mr. Garcia is at the low end of any risk to reoffend.

## III.   SIGNIFICANT VARIANCES HAVE BEEN UPHELD

Several circuits, including the Eleventh, have upheld significant downward variances, pursuant to 18 U.S.C. §3553 (a), based on the favorable personal history and characteristics of the defendant.  In the *United States v. McBride,* 511 F.3d 1293 (11th Cir. 2007) the Eleventh, has upheld a variance from a range of 151-188 months down to 84 months followed by 10 years of supervised release. The Defendant possessed 981 images and 45 videos of child pornography. In arriving at its sentence, the district court noted that the defendant has been abandoned by his parents and sexually abused for years by his grandfather.  The court found that in light of those and other factors, an eighty-four-month sentence was sufficient.

In the instant case we have an offense level that is scoring the defendant at level 40 or between 292 to 365 months. The Government is requesting sentencing at the high end of the guideline range.

The undersigned respectfully suggests that Mr. Garcia, warrants a downward variance nearer to, the statutory minimum. As a first-time offender, Mr. Garcia is the type of defendant that Congress intended to receive a

sentence at the lower end of the statutory range rather than the high end prescribed under the sentencing guidelines.

## CONCLUSION

Based on the totality of the factors to be considered in Section 3553(a), Mr. Garcia's character, criminal history, and active cooperation with the investigation an imposition of a variance or a period incarceration at the low end of the guideline range would be aligned with the authorities cited above. The loss of Mr. Garcia's freedom and the extensive monitoring upon his release will provide just punishment for his actions. A period of incarceration that reflects a small variance from the low end of the guidelines followed by fines, restitution and a substantial period of supervised release will protect the public. In conclusion the Defendant begs this Court to impose a sentence that will fairly punish him for what he has done without taking away most of his life.

Juan Garcia is deeply ashamed of his actions in those text messages. He is not a danger to re-offend. Mr. Garcia asks the Court for a variance from the twenty-four (24) to thirty-year (30) range that is represented in the Sentencing Guidelines. The mandatory minimum in this case is 15 years. Mr. Garcia does not ask this Court deviate from the mandatory minimum; however, the

guideline range is excessive given the totality of the sentencing considerations heard before this Court.

Respectfully submitted,

JEFF T. GORMAN LAW OFFICES

By: _____

Jeff T. Gorman
Florida Bar No.: 538183
47 SE Ocean Boulevard
Stuart, Florida 34994
Phone: 772.220.4000
Facsimile: 772.220.4114

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 9 day of July 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _____

Jeff T. Gorman
Florida Bar No.: 538183

<u>**SERVICE LIST**</u>

**UNITED STATES vs. JUAN ANTONIO GARCIA**
**CASE NO.: 21-CR-14044-CANNON/MAYNARD**
**United States District Court For the Southern District of Florida**

Jeff T. Gorman
Jeff T. Gorman Law Offices
Florida Bar No.: 359970
47 S.E. Ocean Blvd.
Stuart, FL 34994
Tel: (772) 888-8888
Fax: (772) 380-4038
E-Mail: jgorman@jgormanlaw.com
Notices of Electronic Filing

Assistant U.S. Attorney
Stacey Bergstrom
99 NE 4th Street
Miami, Florida 33132
Tel: (305)-715-7647
E-Mail: Stacey.bergstrom@usdoj.gov
Notices of Electronic Filing